# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| FONTAINE SMALLWOOD, | * | |
| | * | |
| Plaintiff | * | |
| | * | Civ. No.: MJM-23-2891 |
| v. | * | |
| | * | |
| | * | |
| THE MAYOR AND CITY COUNCIL OF | * | |
| BALTIMORE: BALTIMORE POLICE | * | |
| DEPARTMENT, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs brought this civil action under Title VII, and other related federal and state statutes, against the Baltimore Police Department ("BPD" or "Defendant") alleging various forms of discrimination and retaliation.[1] This matter is before the Court on Defendant's Motion to Dismiss, ECF No. 14. The Motion is fully briefed and ripe for disposition. No hearing is necessary.

---

[1] The Amended Complaint identifies the defendant in this action as the Mayor and City Council of Baltimore, Maryland: Baltimore Police Department. ECF No. 7. The pending motion to dismiss argues, among other things, that the identified defendant is not a legal entity capable of being sued. *See* ECF No. 14-1 at 6 n.2. However, Plaintiff's Amended Complaint was served on the Baltimore City Law Department and refers to the defendant as "Baltimore Police Department." ECF No. 7. *See Glanville v. Mayor & City Council of Baltimore, Maryland: Baltimore Police Dep't*, Civ. No. EA-23-3395, 2024 WL 5264381 (D. Md. Dec. 31, 2024); *Forrest v. Balt. City, Md.: Balt. Police Dep't*, Civil No. JMC-22-3220, 2023 WL 6381449, at *1 n.1 (D. Md. Sept. 29, 2023). The Court therefore construes the Amended Complaint as being brought against the BPD. In his response to Defendant's motion to dismiss, Plaintiff consents to the removal of the Mayor and the City Counsel from this matter and will proceed solely against the BPD. ECF No. 16-1 at 3 n.1.

*See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant in part, and deny in part the Defendant's Motion to Dismiss.

## I.    BACKGROUND

The following facts are drawn from allegations in Plaintiff's Amended Complaint (ECF No. 7), which must be accepted as true for purposes of resolving the pending motion. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Lieutenant Fontaine Smallwood ("Plaintiff") is a police lieutenant with the Baltimore Police Department and has served as an officer since September 19, 2006. ECF No. 7, ¶ 21. He is an African American male. *Id.* ¶ 16. In January 2018, Plaintiff applied for the Senior Management Institute Program, which is managed through the Police Executive Leadership Forum, a major voice in policing in the United States that has been involved in placement of many police chiefs. *Id.* ¶ 22. According to Plaintiff, access to this program would have significant impact on his promotion potential and future career with BPD. *Id.* However, he, and other Black candidates, were denied access to the program. *Id.*

On July 16, 2018, Plaintiff filed a complaint with the Maryland Commission on Civil Rights ("MCCR") under no. 1808-0446/EEOC no. 12F-2018-01216[2] regarding the denied trainings. *Id.* ¶ 23. Three Black candidates, including Plaintiff, applied along with three White candidates. *Id.* The three White candidates were selected. *Id.* Of the three selected candidates, one was demoted multiple times, and the other two were forced out of the department for ethics and integrity issues. *Id.* After he filed his first complaint, Plaintiff alleges that he began to experience further discriminatory and hostile acts as well as adverse personnel actions. *Id.*

---

[2] MCCR and the EEOC have a "work-sharing agreement" by which they work together to handle each other's cases.

On October 5, 2018, Plaintiff filed a second discrimination complaint with the MCCR, no. 1810-0660/EEOC no. 12F-2019-00161C, alleging race discrimination after he was denied a promotion. *Id.* ¶ 24. The decision-making promotion board consisted of seven White males and one Black male. *Id.* Plaintiff alleges that this type of board has been used to reduce the possibility of diversity at the Command level. *Id.* Plaintiff submitted a second application to attend the Senior Management Institute Program but was never contacted about his application. *Id.*

On May 24, 2019, Plaintiff filed a third complaint with the MCCR regarding retaliation he was experiencing based on filing his previous complaints.[3] *Id.* ¶ 26. After filing his previous complaints, Plaintiff was moved from his job assignment as the Marine Unit Lieutenant, his work schedule was changed, his work vehicle was taken, and he was moved to a small office that had previously been used as an interview room. *Id.*

On June 10, 2019, Plaintiff applied for the position of Major of Education and Training, but Lt. Martin Bartness, a White male, was selected. *Id.* ¶ 27. At the time he was selected, Lt. Bartness had already been demoted at least once. *Id.* Plaintiff alleges that Lt. Bartness received special treatment from Sheryl Goldstein, an administration official and liaison between the Baltimore Mayor's Office and BPD. *Id.* The following day, Plaintiff was initially approved for training at the Northwestern Center for Public Safety School of Command but was later denied. *Id.* ¶ 28. Instead, Lt. Ted Friel, a White male, was approved to attend a leadership training. *Id.* On June 13, 2019, Plaintiff applied for the position of Major of Recruitment. *Id.* ¶ 29. Then, on June 22, 2019, Plaintiff's second request to attend training at the Northwestern Center for Public Safety School of Command was denied. *Id.*

---

[3] The Amended Complaint does not contain a third complaint number associated with this MCCR complaint.

On July 4, 2019, while off-duty, Plaintiff was summoned to Colonel Worley's office where Col. Worley informed him that he had denied Plaintiff's training request. *Id.* ¶ 30. Col. Worley reviewed a memo Plaintiff had forwarded to him about being rescheduled for use-of-force training in which Lt. Bartness had given untruthful information that Plaintiff did not show up for the training. *Id.* Col. Worley informed Plaintiff that his position as the Administrative Lieutenant in the Special Operations section was being eliminated and that he would be transferred to the Eastern District, effective July 7, 2019. *Id.* In August 2019, Plaintiff applied for Police Captain. *Id.* ¶ 31. In November 2019, Plaintiff sent correspondence to Major Wells about the discrimination he had been receiving from Col. Worley. *Id.* ¶ 32.

On November 19, 2019, Plaintiff interviewed for a Lieutenant position. *Id.* ¶ 33. The board selected Plaintiff as the top candidate for the position, but Major Steven Hohman instead chose Lt. Matthew Day, a White male, for the position. *Id.*

On November 22, 2019, Plaintiff was informed that his name was on a transfer order to be transferred to the Major Cases Unit, for which Plaintiff had interviewed, but when the order was distributed, his name was not on it. *Id.* ¶ 34. To his knowledge, Plaintiff was the only eligible candidate for the position. *Id.* Plaintiff received information that Lieutenant Colonel John Herzog, a White male, did not want him in that position and had informed other candidates that he would repost the position when they were eligible. *Id.* The position was subsequently relisted, and another individual received the position. *Id.*

On November 23, 2019, Plaintiff filed a complaint with the MCCR, concerning the discrimination that he had experienced to that date.[4] *Id.* ¶ 35. Then, on January 14, 2020, Plaintiff filed a formal complaint of discrimination with the MCCR.[5] *Id.*

On July 14, 2020, Plaintiff met with the Deputy Commissioner about the Captain promotional process. *Id.* ¶ 36. Plaintiff asked why he had not been promoted despite meeting all the qualifications and exceeding the other candidates in both education and experience. *Id.* The Deputy Commissioner stated that he would look into Plaintiff's complaints of unfair treatment. *Id.*

On October 20, 2020, Plaintiff submitted a request to attend training at the University of Louisville. *Id.* ¶ 37. The training was initially approved, but Col. Worley did not respond to the request. *Id.* Plaintiff alleges that no Black male BPD officer has received training at the University of Louisville, but BPD has sent four other officers. *Id.*

On November 22, 2020, Plaintiff was promoted to the position of Captain and transferred to the Northeastern District, even though the vacancy was in the Southern District. *Id.* ¶ 39. Plaintiff alleges that Executive Command did not want him to work for a Black supervisor and assigned him to a White supervisor, Major Derek Loeffler, by placing him in the Northeastern District. *Id.*

On April 22, 2021, Plaintiff was finally sent to the Senior Management Institute Program. *Id.* ¶ 40.

In July 2021, Plaintiff filed an internal EEO complaint against his direct supervisor, Major Hohman. *Id.* ¶ 41. In November 2021, Plaintiff was assigned to the supervision of Major Jeffrey Featherstone, a White male, after Plaintiff's complaints about his previous supervisor. *Id.* ¶ 42.

---

[4] The Amended Complaint does not contain a fourth complaint number associated with this MCCR complaint.

[5] The Amended Complaint does not contain a fifth complaint number associated with this MCCR complaint.

Plaintiff alleges that after this reassignment, he began to experience instances of discriminatory and disparate treatment and harassment. *Id.* For example, Major Featherstone cancelled Plaintiff's previously scheduled training, refused to allow Plaintiff to participate in further trainings, and scrutinized Plaintiff's work performance, including blaming him for mistakes made by other officers and undermining his authority. *Id.* ¶ 43. In addition, Plaintiff was given an unfavorable work schedule, placing him on a two-week night shift and one-week day shift, while other non-Black Captains were allowed to alternate weeks evenly.[6] *Id.* Further, Major Featherstone spoke about Plaintiff in a derogatory manner to other superior officers and BPD upper management, which Plaintiff believes detrimentally affected his promotion potential by causing him reputational harm. *Id.* ¶ 44. Major Featherstone denied Plaintiff's time-off requests without reason while Plaintiff's non-Black colleagues were not similarly denied. *Id.* ¶ 45. Because Major Featherstone took every weekend off for almost a full year, Plaintiff was prevented from taking weekends off, as the district required coverage all days of the week. *Id.*

In January 2022, Plaintiff contacted Lieutenant Colonel Bartness about unfair treatment that he had been receiving from Major Featherstone in connection with his requested leave. *Id.* ¶ 48. Plaintiff was the only patrol Captain out of nine Captains who had their leave requests denied. *Id.* Between January and June 2022, Plaintiff acted as the District Commander for the Central District, performing job functions above his assigned position. *Id.* ¶ 49. In early July 2022, Plaintiff confronted Major Featherstone about his discriminatory conduct and Plaintiff's complaint was forwarded to BPD's EEO department, which confirmed receipt of that complaint. *Id.* ¶ 50. BPD

---

[6] Plaintiff alleges that Captain Peter Heron, a White male, held the same position as Plaintiff at the time of Plaintiff's MCCR complaints and was allowed to attend the training class that Plaintiff was denied. ECF No. 7, ¶ 46. It is unclear what training class Plaintiff references here. It is Plaintiff's understanding that the trainings were used to increase job performance and prepare Captains for later promotions. *Id.*

subsequently failed to remedy the complaint, leading Plaintiff to file a another complaint with the MCCR on August 15, 2022.[7] *Id.* Around July 12, 2022, Plaintiff was approved for continuous leave under the Family and Medical Leave Act ("FMLA") from July 18, 2022, through August 11, 2022. *Id.* ¶ 51. Prior to the expiration of his leave, Plaintiff submitted a medical note extending his leave until August 22, 2022. *Id.* Major Featherstone was informed that Plaintiff's leave was extended and his return to work was scheduled for August 22. *Id.*

On August 11, 2022, while he was out on medical leave, Plaintiff received a directive to report to headquarters on August 12, 2022. *Id.* ¶ 52. However, Plaintiff could not report because of his medical procedures. *Id.* On August 12, 2022, Plaintiff was issued a memorandum returning him to the rank of Lieutenant, demoting him from his then-rank of Captain, with no further details. *Id.* ¶ 53. When he was demoted, Plaintiff's salary should have been equal to the highest level of pay for a Lieutenant, approximately $133,000. *Id.* ¶ 54. However, Plaintiff's salary was calculated based on his years of service at $123,000, a difference of $10,000. *Id.* Further, after his demotion, Plaintiff was not paid at all for his first pay period, his second pay period did not match the designated amount, Plaintiff did not receive educational incentive pay for which he should have received an annual total of $4,500, and he did not receive pay for an approved holiday. *Id.* Plaintiff's compensation was not corrected, leading him to file a complaint with the Department of Labor's Wage and Hour Division for FMLA discrimination and retaliation. *Id.*

On August 30, 2022, Plaintiff was not sent information that all other eligible candidates had received to interview for the position of Major. *Id.* ¶ 56. On September 14, 2022, Plaintiff returned on temporary limited duty to give over some of his equipment before returning to his

---

[7] The Amended Complaint does not contain a sixth complaint number associated with this MCCR complaint. In his response, Plaintiff states that this complaint is EEOC no. 12F-2022-00736/MCCR no. 2009-0394. ECF No. 16-1 at 6, 6 n. 3; ECF No. 16-2.

FMLA leave until September 22. *Id.* ¶ 58. Upon his return, Plaintiff discovered that BPD had thrown most of his belongings into a room that had an unplugged refrigerator containing thawed out and odorous food, and some of his equipment had been left in an unsecured area. *Id.* A piece of Plaintiff's equipment was missing, which he reported. *Id.* Plaintiff alleges that he received continued harassment from Lt. Niesha Thomas when he gave her information about his missing equipment.[8] *Id.* On September 27, 2022, Plaintiff responded to BPD's EEO office to make to make a harassment complaint, but he was informed that there was "no room at the office for him to make a complaint." *Id.* ¶ 59. Plaintiff then communicated with his union representative about the violation of his rights under BPD's leave policy. *Id.*

On September 29, 2022, Plaintiff communicated with the Fiscal Director, and others, about his unpaid compensation. *Id.* ¶ 60. On September 30, 2022, Plaintiff was informed that Major Desmond Carter-Bey and Captain Jennifer McGrath were targeting him for investigation. *Id.* ¶ 61. Plaintiff alleges that when he partially returned to work in September, Major Carter-Bey and Captain McGrath initiated false and targeted investigations against him by claiming that Plaintiff missed a workday and that he did not submit the required documentation. *Id.* ¶ 64. Plaintiff had not missed any days, as documented in the BPD payroll system, and had provided the necessary documents to his supervising officer. *Id.* Plaintiff sent an email to EEO Director Olufemi Akani about Captain McGrath ordering him to respond to work when he was not scheduled. *Id.* Plaintiff also informed a Major that Captain McGrath was harassing him and creating a hostile work environment. *Id.* On October 6, 2022, Plaintiff participated in a BPD EEO interview with Director

---

[8] Plaintiff also alleges that on September 13, 2022, Lt. Thomas showed up at Plaintiff's personal address, which Plaintiff had never provided to her. ECF No. 7, ¶ 57.

Akani and a Sergeant about the harassment and hostile work environment he had experienced from Major Carter-Bey, Captain McGrath, and Lt. Thomas. *Id.* ¶ 63.

Plaintiff fully returned to work on October 7, 2022. *Id.* ¶ 64. On October 13, 2022, Plaintiff received a departmental memorandum from the Deputy Commissioner stating that his internal EEO complaint against Major Hohman, from July 2021, did not meet the burden of proof. *Id.* ¶ 65.[9] On October 20, 2022, Plaintiff received an email from Detective Tamsiti stating that he was handling Plaintiff's EEO complaint against Major Featherstone. *Id.* ¶ 66. However, Det. Tamsiti had been assigned to work under Major Featherstone, so Major Featherstone had to sign off on Det. Tamsiti's assignment to Plaintiff's EEO complaint. *Id.* The following day, Plaintiff received an email from another detective stating that Plaintiff was being investigated by Internal Affairs in response to a charge made by Captain McGrath based on their previous disagreement over medical slips. *Id.* ¶ 67.

On November 16, 2022, Plaintiff interviewed with a BPD EEO detective about his complaint against Lt. Thomas for coming to his home uninvited on September 13, 2022, and Plaintiff informed her that he had been afraid of Lt. Thomas since that occurrence. *Id.* ¶¶ 57, 69.

On December 20, 2022, Plaintiff applied for a Captain position, and he interviewed for that position on January 3, 2023. *Id.* ¶ 71. Plaintiff alleges that the Captain interview process was unfair because all other candidates had been invited to a meeting about the position except for him. *Id.* ¶¶ 72–75. On January 10, 2023, Plaintiff sent an email to the Director of Human Resources asking for clarification on his eligibility for the Major interview process from September 2022 because he met all the qualifications but, unlike other candidates, was not sent any information about how

---

[9] This paragraph of the Amended Complaint states that this EEO complaint was filed in July 2022, but previously in the Amended Complaint, Plaintiff states that he filed a complaint against Major Hohman in July 2021. ECF No. 7, ¶¶ 41, 65.

to apply. *Id.* ¶ 75. On January 12, 2023, Plaintiff was directed to meet with a Deputy Commissioner. *Id.* ¶ 76. Plaintiff was informed that he had new departmental charges against him for allegedly giving untruthful information about training in February 2022, and for allegedly demonstrating insubordination to Major Featherstone in July 2022. *Id.* Plaintiff was also informed that he could not be reviewed for a Captain position while he had active Internal Affairs investigations against him and that he would be considered at the close of the investigations.[10] *Id.*

In a memorandum dated January 25, 2023, an equity officer, stated that the final decision to demote Plaintiff was the result from a recommendation made collaboratively by the Executive Leadership, a team of at least ten multi-level executives, citing multiple examples of Plaintiff's poor performance. *Id.* ¶ 78. The memorandum stated that this review process was used in four other demotions since 2019, including demotions for one White male, one White female, one Black male, and one Black female. *Id.* The officer determined that there was no evidence of discrimination against Plaintiff in this process. *Id.* However, Plaintiff never received notice of any examples of poor performance. *Id.* The memorandum stated that during the officer's review of Plaintiff's personnel records, she discovered eight performance evaluations between 2008 and 2013, all resulting in average to excellent reviews, but she found no performance evaluations for his performance as a Captain or as a Lieutenant. *Id.* Finally, she stated that Plaintiff's reassignments were likely due to operational need, and that his omission from the interview preparation process for the Captain position hindered his performance during the interview process. *Id.*

---

[10] In January 2024, Baltimore news sources published information relating to the Baltimore Police Accountability Board's inquiry into Captain Jennifer McGrath's promotion to Southwestern District Major in November 2023. ECF No. 7, ¶ 93. Captain McGrath was promoted to a higher rank notwithstanding Internal Affairs investigations and criminal charges, whereas Plaintiff was demoted and subsequently barred from promotions due to his pending Internal Affairs investigation. *Id.*

On February 8, 2023, Plaintiff filed another pro se charge of discrimination with the EEOC, charge no. 12F-2023-00313/MCCR no. 2209-0107. ECF No. 16-1 at 7; ECF No. 16-3. At the time, Plaintiff believed he was submitting an amendment to his prior complaint, not filing a new charge. ECF No. 16-1 at 7 n.5. Plaintiff filed another EEOC complaint, no. 531-2023-00521, which he subsequently amended and submitted as a formal charge through the assistance of counsel.[11] ECF No. 7, ¶ 68.

On March 31, 2023, the MCCR investigator met with Plaintiff to discuss the details of his complaint. ECF No. 7, ¶ 79. On April 24, 2023, the MCCR investigator held a fact-finding conference with Plaintiff and a BPD representative. *Id.* ¶ 80. On July 28, 2023, Plaintiff was issued a Notice of Right to Sue in charge no. 12F-2022-00736. *Id.*

On July 27, 2023, the Wage and Hour Division notified Plaintiff that it had found his claims substantiated and calculated backpay owed by BPD in the amount of $16,615.36, as of the date of investigation. *Id.* ¶ 81. The Wage and Hour Division further indicated in Plaintiff's file that it found evidence of FMLA retaliation against Plaintiff, finding that BPD's explanation of Plaintiff's demotion was baseless and Plaintiff's demotion was "more likely related to his FMLA request." *Id.* The Wage and Hour Division was unable to induce BPD to resolve the FMLA violations. *Id.*

On August 20, 2023, when Plaintiff returned to work from vacation, he was informed that he was to respond to Juvenile Booking starting on August 27, 2023. *Id.* ¶ 82. He was told that he was being involuntarily transferred by Deputy Commander Kevin Jones. *Id.* Plaintiff alleges that BPD has not extended this transfer and that he should have been returned to his parent command

---

[11] The Amended Complaint states that this EEOC complaint was filed on November 9, 2022, ECF No. 7, ¶ 68, but the EEOC complaint bearing this number seems to have been filed on February 22, 2023, ECF No. 16-1 at 7; ECF No. 16-4.

in the Southwestern District. *Id.* Plaintiff was advised to file a Step 2 grievance regarding the transfer. *Id.* ¶¶ 83–84.

Plaintiff contends that since the filing of his complaints, he has been subjected to ongoing discrimination, hostile work environment, and retaliation, including the commencement of Internal Affairs investigations against him and refusal to let him interview for promotions. *Id.* ¶ 85. Plaintiff was not interviewed for the position of Administrative Lieutenant, and Lieutenant Jessica Leitch, a White female, was placed in that position despite being out on medical suspension. *Id.* ¶ 86. Further, Plaintiff was informed that he had to change his work schedule from 6:45 a.m. through 3:15 p.m., to the evening shift of 2:45 p.m. through 11:15 p.m., or the midnight shift of 10:45 p.m. through 7:15 a.m. *Id.* Plaintiff is also under a BPD investigation for allegations that his own protected activity constitutes retaliation against another officer. *Id.* ¶ 88. Plaintiff alleges that the ongoing discrimination, harassment, retaliation, and statutory violations are so egregious and pervasive that they have impacted his mental, emotional, and physical wellbeing. *Id.* ¶ 94.

On October 25, 2023, Plaintiff filed his initial Complaint, ECF No. 1, which was subsequently amended in January 2024, ECF No. 7. Defendant filed its Motion to Dismiss, ECF No. 14; Plaintiff filed a response in opposition, ECF No. 16; and Defendant filed a reply, ECF No. 30.

## II.    STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019)

(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

The Court may consider, at the motion to dismiss stage, documents "explicitly incorporated into the complaint by reference," "those attached to the complaint as exhibits," and "document[s] submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as [they were] integral to the complaint and there is no dispute about [their] authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023) (cleaned up).

## III.    DISCUSSION

### A.  Race Discrimination and Retaliation Claims

#### 1.  Timeliness and Exhaustion under Title VII

Defendant argues that many of Plaintiff's factual allegations and claims are untimely, ECF No. 14-1 at 7–10; ECF No. 20 at 2, and that Plaintiff failed to exhaust his administrative remedies, ECF No. 14-1 at 7. Plaintiff argues that his claims were timely filed because BPD's actions constituted an ongoing violation and that all allegations occurring 300 days prior to the filing of EEOC charge no. 12F-2022-00736, are timely, ECF No. 16-1 at 9–10, and that he satisfied the exhaustion requirement, *id.* at 5–10.

14

### a. Timeliness

The EEOC has initial enforcement responsibility over Title VII claims. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406–07 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). Accordingly, an employee alleging a Title VII violation must first file a charge with the EEOC before attempting to bring suit in court. *Balas*, 711 F.3d at 406 (citing 42 U.S.C. § 2000e–5(e)(1)). "A[n EEOC] charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko*, 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b)).

A plaintiff must first exhaust his administrative remedies before asserting a Title VII claim in federal court. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 543 (2019). To satisfy this requirement, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). But, because Maryland is a deferral state, a claim must be filed no more than 300 days after the alleged unlawful employment practice. *See Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Once a charge is filed, the EEOC investigates the matter and provides notice to the employer. *Chacko*, 429 F.3d at 508 (citing 42 U.S.C. § 2000e–5(b)). If the EEOC finds "reasonable cause" to believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court. *Id.* § 2000e–5(f)(1). On the other hand, where the EEOC concludes that there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the EEOC

to dismiss the charge and notify the complainant of his right to sue in court. *Id.* § 2000e–5(b), f(1). This notice is commonly called a "right-to-sue letter." *See, e.g., Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006). A complainant has 90 days to file suit in federal or state court after being notified of the right to sue. 42 U.S.C. § 2000e–5(f)(1).

Regarding Title VII claims for discrete discriminatory and retaliatory acts, the Supreme Court has stated that a party "must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). The Court explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Notably, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114.

However, unlike claims for discrete acts of discrimination, claims of hostile work environment occur "over a series of days or perhaps years" and "a single act of harassment may not be actionable on its own." *Id.* at 114. Accordingly, "the continuing violation doctrine applies to a hostile work environment claim." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019) (citing *Morgan*, 536 U.S. at 116–17, and *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 223 n.5 (4th Cir. 2016)). If "an act contributing to [a hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability[.]" *Morgan*, 536 U.S. at 117. "[T]he employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment." *Id.* at 118. "[E]ven if most of the harassing conduct on which a plaintiff relies to establish her hostile

16

work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act continuing the violation occurred within the statutory period." *Guessous*, 828 F.3d at 222.

### b. Exhaustion

Even after an employee has exhausted the administrative process and receives permission to sue, he is procedurally barred from bringing any Title VII claims that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof . . . ." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384 (4th Cir. 2022) (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)). The allegations in the EEOC charge "generally operate to limit the scope of any subsequent judicial complaint." *Chacko*, 429 F.3d at 509 (citation omitted). "[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Id.*

Courts must keep also in mind, however, that EEOC complaints are commonly made "by those unschooled in the technicalities of formal pleading" and should be construed with the "utmost liberality." *Hart v. Broadway Servs., Inc.*, 899 F. Supp. 2d 433, 440 (D. Md. 2012) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). *See also Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012) ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). "A federal court may hear a claim that was not presented to the EEOC so long as it is reasonably related to plaintiff's EEOC charge and can be expected to follow from a reasonable administrative investigation." *Faulkenberry*, 670 F. Supp. 3d at 252 (cleaned up); *see also Cowgill*, 41 F.4th at 384.

### c. Analysis

The filing of this suit was timely because it was filed within 90 days of Plaintiff's receipt of the right-to-sue notice on July 28, 2023. *See* 42 U.S.C. § 2000e–5f(1); ECF No. 16-6.

Any claims for discrete acts of discrimination or retaliation that fall within the scope of Plaintiff's EEOC charges and 300 days prior to the filing of EEOC charge no. 12F-2022-00736 on August 15, 2022, are timely asserted in this action. Defendant is correct that, insofar as Plaintiff sues for discrete acts that occurred between 2018 and October 19, 2021, those claims are untimely. *Morgan*, 536 U.S. at 110. However, to the extent that acts alleged to have occurred within this period constitute part of a hostile work environment that continued after October 19, 2021, any such claim for hostile work environment is timely as a continuing violation. *Id.* at 117–18.

Further, the exhaustion requirement has been functionally satisfied. Even though the right to sue notice was only issued for charge no. 12F-2022-00736, that notice was issued on July 28, 2023, after Plaintiff filed the other charges at issue here: nos. 12F-2023-00313 and 531-2023-00521. An email sent to Plaintiff's counsel from the EEOC that states: "Charge #531-2023-00521 was closed as a duplicate charge on April 14, 2023. Our system indicates that it was found to be a duplicate of EEOC Charge #s 12F-2023-00313 (MCCR #2302-0107) & 12F-2022-00736 (MCCR #2209-0394). Apparently the closure letter sent by the EEOC's Baltimore Field Office neglected to include these two other numbers." ECF No. 16-5. It appears that all three charges were meant to be included in the right to sue notice. Plaintiff attempted to file charge no. 12F-2023-00313 to amend charge no. 12F-2022-00736 but inadvertently submitted it as a new charge as a self-represented complainant. Further, EEOC no. 531-2023-00521 was meant to be an amendment to the original two complaints but was filed by the EEOC as a duplicate charge. The EEOC

proceedings based on the three charges adequately placed Defendant on notice of the violations alleged in this action. *See Cowgill*, 41 F.4th at 384.

### 2. Count I – Title VII Race Discrimination

In Count I of the Amended Complaint, Plaintiff asserts a claim of race discrimination in violation of Title VII. ECF No. 7, ¶¶ 97–118.

To establish a prima facie case of discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) an adverse employment action by the employer; (3) satisfactory job performance at the time of the adverse employment action; and (4) that the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." *Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015) (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)). Specifically, "to establish a *prima facie* case of discrimination based on a failure to promote, [a plaintiff] must show that: (1) [ ]he is a member of a protected class; (2) [ ]he applied for the position in question; (3) [ ]he was qualified for the position; and (4) [ ]he was rejected for the position 'under circumstances giving rise to an inference of unlawful discrimination.'" *Hodge v. Walrus Oyster Ale House*, Civ. No. TDC-18-3845, 2019 WL 6069114, at *6 (D. Md. Nov. 15, 2019) (quoting *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)). The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

"[A] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss . . . ." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012*)* (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–15 (2002)). But a plaintiff must allege sufficient

facts to "'state[ ] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct'" and "to raise a right to relief above the speculative level . . . ." *Id.* (quoting *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. at 555).

"[S]ome adverse employment action is required" to prevail on a claim of discrimination under Title VII. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (citation omitted). Specifically, a plaintiff must show that the defendant employer took some action that "brought about some 'disadvantageous' change in an employment term or condition"—in other words, "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024) (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).

Additionally, the adverse employment action must have "occurred under circumstances that raise a reasonable inference of unlawful discrimination . . . ." *Gaines v. Balt. Police Dep't*, Civ. No. ELH-21-1211, 2023 WL 2185779, at *12 (D. Md. Feb. 22, 2023) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021)). An inference of unlawful discrimination is supported where "similarly-situated employees outside the protected class receive[ ] more favorable treatment." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *White*, 375 F.3d at 295). "'[W]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination,' the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects." *Gaines*, 2023 WL 2185779, at *12 (quoting *Swaso*, 698 Fed. App'x at 748); *see also Asi v. Info. Mgmt. Grp., Inc.*, Civ. No. GLR-18-3161, 2019 WL 4392537, at *6 (D. Md. Sept. 13, 2019) (pleading disparate-treatment discrimination claim requires plaintiff to "identify the proposed comparator and establish a plausible basis for believing the employee was actually similarly situated") (cleaned up).

First, there is no dispute that Plaintiff is a member of a protected class.

Second, Plaintiff alleges that he sustained several discrete adverse employment actions after October 19, 2021, including denial of certain promotions and transfers to which he had applied; denial of certain training opportunities, which he alleges put him at a disadvantage for promotion; being involuntarily transferred across districts, which resulted in unfavorable work schedules; denial of requests for leave; demotion from rank of Captain to Lieutenant; being denied certain information and preparation sessions for promotion opportunities; "missing pay"; and being ordered to report to work when not scheduled. Because the adverse employment action need not be significant, *see Muldrow*, 601 U.S. at 359, Plaintiff's contentions state a plausible claim. These actions include having his time off requests denied, involuntary transfers, and being assigned an unfavorable work schedule.

Third, Plaintiff has adequately alleged that his job performance was satisfactory. He has been employed with BPD since 2006. ECF No. 7, ¶ 21. During his tenure with BPD, he "met all qualifications, and exceeded in both education and experience" compared to his peers, *id.* ¶ 36, and eventually acted as the District Commander for the Central District, performing job duties above his assigned position, *id.* ¶ 49. He received no notice of poor performance and was unaware of any HR decisions against him. *Id.* ¶ 78. Plaintiff further alleges that he was qualified for the promotions to which he applied. *See, e.g.*, *id.* ¶¶ 36, 75, 78.

Lastly, Plaintiff alleges sufficient facts, when viewed in the light most favorable to him, to support a reasonable inference that he was denied promotional opportunities because of his race. For example, when applying for a Captain position in December 2022, Plaintiff was denied information and excluded from preparation sessions. Plaintiff alleges that he was the only Black candidate for the position and, at the same time, was the only applicant excluded from the mock

interview and preparation session made available to other candidates. *Id.* ¶¶ 74, 78. And, despite having previously been promoted to the rank of Captain, Plaintiff was the only applicant not to make the eligibility list. *Id.* ¶ 77. Thus, the Amended Complaint states a plausible claim of race discrimination based on Defendant's failure to promote him and denial of training and promotional opportunities. To this extent, Defendants' Motion to Dismiss shall be denied as to Count I.

However, Plaintiff fails to allege that enough facts to raise a reasonable inference that the various other adverse employment actions alleged in the Amended Complaint were taken because of Plaintiff's race. Plaintiff does not allege any facts to suggest that his race accounted for his demotion from Captain to Lieutenant, his transfers between districts, the denial of his requests for leave, Defendant's alleged failure to pay his full compensation, or orders that he report to work when not scheduled. Any race discrimination claim Plaintiff seeks to assert based on these actions shall be dismissed without prejudice for inadequate pleading.

### 3.  Count II – Title VII Hostile Work Environment

In Count II of the Amended Complaint, Plaintiff asserts a claim of race-based hostile work environment in violation of Title VII. ECF No. 7, ¶¶ 119–27.

"Title VII prohibits racial or sexual harassment that creates a hostile work environment for the harassed employee." *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015)). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 116–17 (quoting 42 U.S.C.

§ 2000e–5(e)(1)). But even "an isolated incident of harassment, if extremely serious, can create a hostile work environment." *Boyer-Liberto*, 786 F.3d at 268. "[T]o prevail on a Title VII claim that a workplace is racially hostile, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Id.* at 277 (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).

The "severe or pervasive" requirement has both subjective and objective components. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993); *Perkins*, 936 F.3d at 207–08; *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 331 (4th Cir. 2018). A plaintiff must show that he "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Perkins*, 936 F.3d at 208 (citation omitted). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). A plaintiff "must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins*, 936 F.3d at 208. "[W]hen determining whether the harassing conduct was objectively severe or pervasive," a court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). The "severe and pervasive" analysis is not, and "by its nature cannot be, a mathematically precise test." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). However, "[a] discriminatorily abusive work environment . . . can and often will detract from employees' job performance, discourage

employees from remaining on the job, or keep them from advancing in their careers." *Harris*, 510 U.S. at 22.

"The 'standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code.'" *Perkins*, 936 F.3d at 208 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher*, 524 U.S. at 788). Likewise, the "[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment[.]" *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 21). And "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *Sunbelt Rentals*, 521 F.3d at 315–16 (internal quotation marks and citations omitted).

Plaintiff's allegations of workplace harassment extend back to 2018 and reflect a range of unwelcome conduct, including (1) multiple instances of denying Plaintiff's requests to attend training, ECF No. 7, ¶¶ 22, 29, 37, 43; (2) being passed over for promotions, *id.* ¶¶ 27, 29, 31, 33, 38, 71, 86; (3) having his work vehicle taken and having his office moved into a small interview room, *id.* ¶ 26; (4) having his work schedule changed, *id.*; (5) being involuntarily transferred, *id.* ¶¶ 30, 65, 82; (6) being demoted while out on FMLA leave, *id.* ¶ 53; (7) having his personal property placed in a room with rotting food, *id.* ¶ 58; (8) having Lt. Thomas visit his personal address, uninvited, while he was still out on leave, *id.* ¶ 57; and (9) receiving inadequate pay, *id.* ¶¶ 54, 60. Plaintiff does not allege that this conduct was so severe or pervasive as to amount to an abusive work environment. Even if the conduct was severe and pervasive enough to alter the

conditions of his employment, he fails to allege facts to suggest that most of it was based on his race. As explained in Part III.A.2 *supra*, the Court finds Plaintiff's allegations sufficient to raise a reasonable inference that his being rejected for certain promotions amounted to race discrimination. But most of the conduct Plaintiff claims was harassing reflects no connection to Plaintiff's race. Accordingly, Plaintiff's hostile work environment claim in Count II must be dismissed.

### 4.   Count III – Title VII Retaliation

In Count III of the Amended Complaint, Plaintiff asserts a claim of retaliation in violation of Title VII. ECF No. 7, ¶¶ 128–46.

To establish a prima facie case of retaliation under Title VII, "a plaintiff must show that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli*, 648 F.3d at 223 (citation omitted). The alleged retaliatory action must be "materially adverse," such that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Perkins*, 936 F.3d at 213 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "An adverse action that bears sufficient temporal proximity to a protected activity may, along with the existence of other facts, suggest that the adverse employment action occurred because of the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021). Ultimately, however, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (emphasis added)).

Here, Plaintiff alleges that he engaged in various forms of Title VII protected activity between November 2019 and December 2022, including both formal and informal complaints of race discrimination, harassment, and retaliation within BPD; follow-up requests with EEO officers within BPD; and formal administrative charges of discrimination and retaliation submitted to MCCR and EEOC. However, the only materially adverse action that may bear a plausible causal connection to Plaintiff's protected activities is the decision not to select him for the Captain position to which he applied in December 2022. Specifically, Plaintiff filed EEOC complaint no. 531-2023-00521 on November 9, 2022; interviewed with a BPD EEO detective on November 16; and asked to view a EEO complaint case file on November 17. ECF No. 7, ¶¶ 68–70. He applied for the Captain position approximately one month later, was excluded from a preparation session made available to other applicants, and was denied the promotion by a decision-making board that was "aware of or involved in EEO complaints that he had made." *Id.* ¶¶ 71, 74, 77, 78. These facts are sufficient to suggest a causal connection for purposes of a prima facie case of Title VII retaliation. Accordingly, Defendant's Motion to Dismiss shall be denied as to Plaintiff's retaliation claim in Count III based on the decision not to promote him.

Although Plaintiff alleges various other actions by Defendant that may be materially adverse for purposes of a retaliation claim, none are alleged to have occurred close enough in time, or to have otherwise been causally connected, to Plaintiff's protected activities to support a reasonable inference of retaliation. Accordingly, any retaliation claim based on actions apart from the failure to promote in December 2022 and January 2023 shall be dismissed without prejudice for inadequate pleading.

### 5.  Count IV – 42 U.S.C. §§ 1981 & 1983

In Count IV of the Amended Complaint, Plaintiff asserts a claim of race discrimination and retaliation under 42 U.S.C. §§ 1981 and 1983. Defendant argues that Plaintiff's claim, which amounts to a *Monell* claim, fails to sufficiently allege failure to train, does not identify an alleged unconstitutional policy, and does not allege causation. ECF No. 14-1 at 26–28.

Section 1983 provides a cause of action against a person who, acting under color of state law, subjects a person within the jurisdiction of the United States to the deprivation of federal rights. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines*, 2023 WL 2185779, at *23 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). These rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law[,]" 42 U.S.C. § 1981(c), including by race discrimination and retaliation for opposing race discrimination in employment, *see Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016); *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008)).

The elements required to establish race discrimination and retaliation are the same under Title VII and 42 U.S.C. §§ 1981 and 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) ("elements required to establish [race discrimination] are the same under [Title VII and §§

1981 and 1983]"); *Boyer-Liberto*, 786 F.3d at 277 ("same test applies to" hostile work environment

claims under Title VII and § 1981); *Guessous*, 828 F.3d at 217 ("elements of [Title VII and § 1981]

retaliation claims are identical").

"The BPD . . . is considered a municipal entity subject to suit for purposes of §

1983." *Nicholson v. Baltimore Police Dep't*, Civ. No. DKC 20-3146, 2021 WL 1541667, at *6 (D.

Md. Apr. 20, 2021); *see also Fish v. Mayor & City Council of Baltimore*, Civ. No. CCB-17-1438,

2018 WL 348111, at *3 (D. Md. Jan. 10, 2018). But liability under § 1983 "attaches 'only where

the municipality itself causes the constitutional violation at issue.'" *Nicholson*, 2021 WL 1541667,

at *6 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). It is well established that

"[t]here can be no vicarious liability under § 1983[.]" *Id.* (citing *Connick v. Thompson*, 563 U.S.

51, 60 (2011)). Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a

municipal entity may be subject to § 1983 liability based on violations of federal rights by

individual defendants, "but only if those defendants were executing an official policy or custom

of the [municipal entity] that resulted in a violation of the plaintiff's rights.'" *Fish*, 2018 WL

348111, at *3 (quoting *Jones v. Chapman*, Civ. No. ELH-14-2627, 2015 WL 4509871, at *12 (D.

Md. July 24, 2015)).

Although, as discussed in Parts III.A.2 and III.A.4 *supra*, Plaintiff states plausible Title VII

claims for race discrimination and retaliation, he cannot state a plausible claim against BPD under

42 U.S.C. §§ 1981 and 1983 without allegations that individuals within BPD violated his federal

rights by executing official BPD policies or customs. In the Amended Complaint, Plaintiff alleges

in a conclusory fashion that actions alleged throughout the pleading "are part of an institutional

practice or custom, constituting an official policy of the Baltimore Police Department . . . ." ECF

7, ¶ 154. But Plaintiff offers no facts to support this boilerplate claim. Indeed, in his opposition to

Defendant's motion, Plaintiff relies solely upon his pleading of race discrimination in support of his §§ 1983 and 1981 claim in Count IV. These allegations do not suffice to state a plausible *Monell* claim. Accordingly, Count IV must be dismissed.

### 6.  Count V – MFEPA

In Count V of the Amended Complaint, Plaintiff asserts a claim of workplace harassment in violation of the Maryland Fair Employment Practices Act ("MFEPA"). ECF No. 7, ¶¶ 169–75.

MFEPA prohibits discrimination in employment on the basis of race, sex, and other protected classifications. Md. Code Ann., State Gov't, § 20-606(a). This statute "is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 412 (D. Md. 2015) (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)); *Lowman v. Maryland Aviation Admin.*, Civ. No. JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019). A plaintiff may state a claim for harassment or hostile work environment by alleging that "the offending conduct (1) was unwelcome, (2) was based on [his] [race or] sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to [his] employer." *Williams*, 86 F. Supp. 3d at 412 (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003)).

Plaintiff's MFEPA workplace harassment is subject to dismissal for the same reasons as his Title VII hostile work environment claim, as explained in Part III.A.3 *supra*. Accordingly, Count V of the Amended Complaint shall be dismissed.[12]

---

[12] Defendant argues in a footnote that BPD is entitled to Eleventh Amendment immunity from Plaintiff's MFEPA claims because it is an arm of the State of Maryland. ECF 14-1 at 11 n.3 (citing *Effland v. Baltimore Police Dep't*, Civ. No. CCB-20-3503, 2022 WL 3107144, at *6 (D. Md. Aug. 4, 2022)). However, BPD's status as a state agency immune from MFEPA claims may have changed since the *Effland* decision and other similar decisions of this Court. *See* Balt., Md., Code art. 1 § 5-1(b)(2)(iii) (listing "Baltimore City Police Department" as an agency of Baltimore City); Baltimore City Council Bills 23-0445 and 23-0449

### B. FMLA Interference and Retaliation Claims

#### 1. Count VI – FMLA Interference

Plaintiff asserts a claim for interference with FMLA rights in Count VI of the Amended Complaint. ECF No. 7, ¶¶ 177–83.

The FMLA entitles eligible employees to take "12 workweeks of leave" during a 12-month period for a qualifying "serious health condition that makes the employee unable to perform the functions of" his job. *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 795 (4th Cir. 2023). "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). If the employer determines that the requested leave will not be designated as FMLA-qualifying, "the employer must notify the employee of that determination." 29 C.F.R. § 825.300(d)(1). Employers are also required to furnish a "rights and responsibilities" notice to the employee "detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations" with respect to their FMLA leave. 29 C.F.R. § 825.300(c)(1).

"These rights are 'prescriptive,' and claims for violations of them are known as 'interference' or 'entitlement' claims, arising under 29 U.S.C. § 2615(a)(1)[.]" *Adkins*, 70 F.4th at 795. Section 2615(a)(1) provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of[,] or the attempt to exercise, any right provided under" the FMLA. *Id.* at

_____

(Jan. 24, 2024) (embedding BPD into Baltimore City Charter and Code); Md. House Bill 732; Md. Senate Bill 894. *See also Glanville v. Mayor & City Council of Baltimore, Maryland: Baltimore Police Dep't*, Civ. No. EA-23-3395, 2024 WL 5264381, at *13 n.8 (D. Md. Dec. 31, 2024) (nothing that "at least one decision has suggested that a change in Maryland law may have called [BPD's sovereign immunity] into question."). The Court need not reach the question of whether BPD is immune from MFEPA claims in federal court because Plaintiff's claim is subject to dismissal for insufficient pleading, as described above. *See id.*

796 (quoting 29 U.S.C. § 2615(a)(1)). "[A]n employee has a cause of action against his employer under 29 U.S.C. § 2617 when he can prove that (1) the employer interfered with his exercise of FMLA rights and (2) the interference caused the employee prejudice." *Id.* (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). "[T]o make out an FMLA interference claim, an employee must demonstrate (1) that he is entitled to an FMLA benefit; (2) that his employer interfered with the provision of that benefit; and (3) that the interference caused him harm." *Id.* (citing *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015)). The FMLA "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale*, 535 U.S. at 89. In a case "where the plaintiffs sought and were granted . . . medical leave, during which they were fired for misconduct," the Fourth Circuit concluded that the plaintiffs "failed to establish the prejudice element of their FMLA interference claim." *Adkins*, 70 F.4th at 797.

Here, Plaintiff sought, and was granted FMLA leave. BPD approved his leave request on July 12, 2022, for the period of July 18, 2022, through August 11, 2022. ECF No. 7, ¶ 51. BPD also granted multiple extensions of that leave, *id.*, and Plaintiff did not return to duty until September 22, 2022, *id.* ¶ 58. Plaintiff contends that he was an eligible employee entitled to receive FMLA benefits, that BPD demoted him in violation of BPD and FMLA policy while he was lawfully using his FMLA leave, and that he suffered irreparable harm as a result. *Id.* ¶¶ 179–183. These allegations are better suited to a FMLA retaliation claim, as asserted in Count VII. *See Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 617–19 (W.D. Va. 2014) (explaining the difference between FMLA interference and retaliation and dismissing Plaintiff's FMLA interference claim where Plaintiff failed to allege that she was denied FMLA leave and therefore, any prejudice related to FMLA interference). Because Plaintiff fails to state a claim for FMLA interference, Count VI must be dismissed.

### 2.  Count VII – FMLA Retaliation

Plaintiff asserts a claim for FMLA retaliation in Count VII of the Amended Complaint. ECF No. 7, ¶¶ 184–90.

It is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). "Retaliation claims brought under the FMLA are analogous to those brought under Title VII." *Adams*, 789 F.3d at 429 (citation omitted). "Plaintiff must prove three elements to establish a *prima facie* case of retaliation: (1) 'she engaged in a protected activity'; (2) 'her employer took an adverse employment action against her'; and (3) 'there was a causal link between the two events.'" *Id.* (quoting *Boyer–Liberto*, 786 F.3d at 281). *Accord Boone v. Bd. of Governors of Univ. of North Carolina*, 858 F. App'x 622, 624 (4th Cir. 2021) (per curiam); *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). If, in response to a prima facie case of FMLA retaliation, "the employer offers a non-discriminatory explanation for the plaintiff's termination, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001).

Viewing the facts in the light most favorable to the Plaintiff, the Amended Complaint contains sufficient allegations to support an FMLA retaliation claim. Plaintiff alleges that he engaged in protected activity by seeking medical leave to which he was entitled under the FMLA. ECF No. 7, ¶ 51; ECF No. 16-3; ECF No. 16-4, ¶¶ 21–25. Plaintiff alleges that BPD took a materially adverse action against him by demoting him while he was out on leave. ECF No. 7, ¶ 53; ECF No. 16-3. The temporal proximity between Plaintiff's exercise of his FMLA rights and his demotion is adequate to suggest a causal connection for purposes of a prima facie FMLA retaliation case. Although the Amended Complaint notes that the justification offered for

Plaintiff's demotion included "multiple examples of Plaintiff's poor performance," Plaintiff alleges that he never received notice of any alleged "poor performance" and review of his personnel records revealed no evaluations of his performance as a Captain or Lieutenant. *Id.* ¶ 78. In addition, the Amended Complaint contains allegations of mistreatment surrounding Plaintiff's demotion, including the allegation that, while he was on FMLA leave, most of Plaintiff's belongings were thrown into a room that stored rotting food and some of his equipment was left in an unsecured area. *Id.* ¶ 58. Viewing the foregoing facts in their totality and in a light favorable to Plaintiff, the Court finds them adequate to state a plausible claim that the non-retaliatory reason proffered for Plaintiff's demotion was pretextual. Accordingly, Defendant's motion to dismiss shall be denied as to Count VII.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be GRANTED in part and DENIED in part. Counts II, IV, V, and VI will be dismissed without prejudice. The Motion will be DENIED as to Plaintiff's Title VII race discrimination claim in Count I based on Defendant's failure to promote and denial of training and promotional opportunities, Plaintiff's Title VII retaliation claim in Count III regarding the decision not to promote Plaintiff, and Count VII. All claims against the Mayor and City Council are dismissed, *see supra* n.1, the case will proceed against the Baltimore Police Department.

A separate Order will follow.

  2/13/25
_____                          _____
Date                                   Matthew J. Maddox
                                       United States District Judge

33