**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **FONTAINE SMALLWOOD,** | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-23-2891** |
| **v.** | * | |
| **THE MAYOR AND CITY COUNCIL OF BALTIMORE, MARYLAND: BALTIMORE POLICE DEPARTMENT** | * | |
| **Defendant.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Fontaine Smallwood brought this civil action against the Baltimore Police Department ("BPD" or "Defendant") alleging various forms of employment discrimination and retaliation in violation of federal law. On February 13, 2025, this Court granted Defendant's motion to dismiss in part, dismissing several counts of the Complaint and limiting others. The remaining claims asserted against BPD are race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") in Count I, retaliation in violation of Title VII in Count III, and retaliation in violation of the Family and Medical Leave Act ("FMLA") in Count VII.

Following discovery, Defendant filed a motion for summary judgment. ECF No. 38. Plaintiff filed a response in opposition to Defendant's motion, ECF No. 46, and Defendant filed a reply. ECF No. 49. A hearing is not necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2025). For the reasons stated herein, Defendant's motion for summary judgment is granted.

## I. BACKGROUND

Smallwood, who identifies as black/African American, joined BPD in 2006, served in multiple capacities, and eventually was promoted from Lieutenant to Captain on November 22, 2020. Def. Ex. 2, Pl.'s Resp. to Def.'s Interrog., Answer No. 3; Def. Ex. 3, Fontaine Smallwood Dep. at 25:15–16; 49:20–50:3; ECF No. 46-1 ("SGI"), ¶ 1.[1] As a Captain, Smallwood was part of BPD's Command Staff and served at the pleasure of the Police Commissioner. Def. Ex. 4, Decl. of Eric Melancon, ¶ 5; SGI ¶ 2.[2] Smallwood's first assignment as Captain was in the Northeastern District under Major Derek Loeffler. Def. Ex. 3 at 49:20–50:3; SGI ¶ 5.

On April 23, 2021, Smallwood sought a detail to attend the Police Executive Leadership Forum's Senior Management Institute for Police ("SMIP") in Orlando, Florida, describing the program as "a challenging and invigorating curriculum for law enforcement managers." Def. Ex. 7, SMIP Training Records at BPD 002357; SGI ¶ 10. SMIP is the premier leadership program to which BPD assigns Command Staff and is limited to a select group due to its cost and restricted enrollment. Def. Ex. 6, Decl. of Derek Loeffler, ¶ 6; SGI ¶ 11. On May 26, 2021, BPD approved Smallwood's request, authorized reimbursement in the amount of $10,348.95, and granted paid leave from July 5 through July 24, 2021, to attend the training course. *See* Def. Ex. 7; SGI ¶ 12.

---

[1] Smallwood submitted a fifty-five-page "Statement of Genuine Issues of Material Fact in Dispute," in which he admits or denies facts set forth in BPD's Motion for Summary Judgment. The admissions and denials statement ("SGI") sometimes, but not always, includes citations to other exhibits and also contains lengthy argument. As BPD points out, this submission violates Local Rule 105.3 by exceeding the 35-page limit for opposition memoranda. While improper, the SGI will be considered to the extent it confirms facts that are undisputed between the parties.

[2] Majors report to Lieutenant Colonels, who oversee multiple districts, and the Lieutenant Colonels report to the Chief of Patrol, who oversees all nine districts. Def. Ex. 3, 80: 4–12; Def. Ex. 5, Decl. of Kevin Jones, ¶ 5; SGI ¶ 3. Each Major had one Captain as a direct subordinate, and each Captain supervised five to six Lieutenants. Def. Ex. 3 at 79:15–17; 79:18–80:3; SGI ¶ 4.

On June 1, 2021, Major Loeffler was reassigned and replaced by Steven Hohman as Major of the Northeastern District. Def. Ex. 6, ¶ 14; Def. Ex. 3 at 62:14–63:6; SGI ¶ 13. Smallwood and Hohman had issues almost immediately. Def. Ex. 3 at 62:14–17; SGI ¶ 14.

Shortly before Thanksgiving 2021, BPD transferred Smallwood to the Central District to serve as Captain. Def. Ex. 3 at 70:4–7; Pl. Ex. 1, Decl. of Fontaine Smallwood, ¶ 22. The Major of the Central District at the time was Jeffrey Featherstone. Def. Ex. 9, Def's Answers to Pl.'s First Set of Interrog., Answer No. 16; Pl. Ex. 1 ¶ 22.

Although Smallwood had previously been approved to attend a "Training for Trainers" course scheduled for November 2021, Featherstone reviewed the request and denied it upon Smallwood's arrival to the Central District. Def. Ex. 3 at 210:18–211:3, 213:1–3; SGI ¶ 26. Smallwood's request was the only such request that Featherstone evaluated. Def. Ex. 10, Decl. of Jeffrey Featherstone, ¶ 7; SGI ¶ 27. In his declaration, Featherstone states that he denied Smallwood's request because Smallwood had just arrived in the Central District as Captain and, as second in command, it was more important for Smallwood to attend "vital onboarding sessions meant to help ease the burden of transition, familiarize him with his new district, and improve his performance there." Def. Ex. 10, ¶ 8. Featherstone further states that sending Smallwood to a forty-hour training course that Featherstone believed was unnecessary was "unworkable." *Id.* ¶¶ 9–10.

Although Featherstone denied Smallwood the training, Lieutenant Colonel Martin Bartness and Chief of Patrol Kevin Jones sent Captain Peter Heron, a white male, to the training. Def. Ex. 9, Answer to Interrogatory No. 7; Def. Ex. 11, Decl. of Martin Bartness, ¶ 7; SGI ¶ 35. Heron was from the Southern District and was under the command of Major Byron Conaway. *Id.* Heron was not allowed to finish the course due to unexpected operational demands of the Southern District that required his return. Def. Ex. 9, Answer to Interrog. No. 7; SGI ¶ 37.

Even though Smallwood could not attend the "Training for Trainers" course, he was approved to attend the FBI-LEEDA Command Leadership Institute, a week-long program held in April 2022. Def. Ex. 12, FBI-LEEDA Training Records; SGI ¶ 38. Smallwood completed and graduated from the course. Def. Ex. 3 at 102:9–12; SGI ¶ 39.

Major Featherstone went on extended leave in December 2021 and did not return until June 2022, during which time Smallwood served as acting Major. Def. Ex. 10, ¶ 11; Def. Ex. 9, Answer to Interrog. No. 15; SGI ¶ 40. After Featherstone's return, Smallwood took FMLA leave from July 12 to August 22, 2022. Def. Ex. 3 at 260:14–15; SGI ¶ 41.

Smallwood's relationship with Featherstone deteriorated, and Smallwood lodged an internal discrimination complaint against Featherstone that was ultimately deemed not sustained by BPD's Equal Opportunity and Diversity Section. Def. Ex. 10, ¶ 16; SGI ¶ 47.

Chief of Patrol Jones convened the Command Staff Review Committee ("CSRC") to discuss Smallwood's performance. Def. Ex. 5, Decl. of Kevin Jones, ¶ 7; SGI ¶ 48. The CSRC meets if concerns arise about a command-level member's performance and those concerns are raised to upper management. Def. Ex. 4, ¶ 9; SGI ¶ 55. The CSRC is comprised of the Chief of Staff (Chair), four Deputy Commissioners, two Colonels, three Lieutenant Colonels, the Equity Officer, the Chief of Legal, and the Director of the Equal Opportunity and Diversity Section. Def. Ex. 4, ¶ 8; SGI ¶ 54. The CSRC has implemented a formalized review process in an effort to ensure fair, equitable, and inclusive decisions regarding the selection and demotion of command-level personnel in accordance with national best practices. Def. Ex. 4, ¶¶ 5–6; SGI ¶ 51. The CSRC reviews available documentation, votes on the appropriate course of action, and issues a recommendation to the Police Commissioner, who may accept, reject, or modify it. Def. Ex. 4, ¶ 9; SGI ¶ 57.

Consistent with established procedures, Chief of Patrol Jones prepared a memorandum on August 1, 2022, detailing his concerns regarding Smallwood's performance and presented it to the CSRC for review. Def. Ex. 15, Mem. of Kevin Jones to CSRC at BPD 001053; SGI ¶ 59. Jones noted that Smallwood struggled with supervision, engaged in passive-aggressive conduct that hindered his team, showed little improvement, and had become a significant management problem at multiple and varied district assignments such that continuing his tenure as Captain would undermine BPD's efforts to improve its organizational culture. Def. Ex. 15. In addition to Jones's memorandum, the CSRC reviewed documentation regarding Smallwood's performance, his interactions with subordinates and peers, his responsiveness to community stakeholders, and his reliability as a representative of the agency. *See* Def. Ex. 16A, Decl. of Olufemi Akanni, ¶ 7; Pl. Ex 1, ¶ 59.

After reviewing the full record, the CSRC unanimously recommended that then-Police Commissioner Michael Harrison demote Smallwood from Captain to Lieutenant. Def. Ex. 4, ¶ 12; SGI ¶ 90. When Harrison accepted the recommendation, Smallwood was still on FMLA leave. Def. Ex. 4 ¶¶ 13–14; SGI ¶ 91. By letter dated August 12, 2022, Harrison notified Smallwood that he was returned to the rank of Lieutenant. Def. Ex. 4, ¶ 13; SGI ¶ 94.

After returning from FMLA leave, Smallwood was assigned to the Administrative Duties Division while medically restricted and then, upon return to light duty, assigned to the Southwestern District. Def. Ex. 3 at 84:1–4; SGI ¶ 95. Smallwood remained there only briefly before being transferred to the Information and Technology Division in late September 2022. Def. Ex. 3 at 33:19–20; SGI ¶ 96.

At the Southwestern District, Smallwood reported to Captain Jennifer McGrath. Def. Ex. 17, Decl. of Jennifer McGrath, ¶ 5; SGI ¶ 97. On September 22 and 24, 2022, McGrath filed two

Public Integrity Bureau ("PIB") complaints alleging that Smallwood failed to report for duty, was absent without authorization, and failed to notify command of his duty status and medical follow-ups. Def. Ex. 17, ¶ 9; SGI ¶ 101. Although PIB charged Smallwood with AWOL, neglect of duty, and time theft, it did not ultimately sustain those charges. Def. Ex. 18, PIB's Comprehensive Officer History of Smallwood; SGI ¶ 102. PIB's investigation, however, revealed the history of Smallwood's leave requests dating from December 2020 through 2022, which included thirty-five pages of requests reflecting "an unusually high number of approved leave hours." Mem. in Supp. of Mot. for Summ. J. at 14 (citing Def. Ex. 19, History of Smallwood's Leave Requests); *but see* SGI ¶ 104 (admitting that Def. Ex. 19 shows the history of Smallwood's leave requests but arguing that, absent context, "unusually high" is a conclusory characterization).

On December 6, 2022, BPD announced it was accepting applications for Captain. Def. Ex. 4, ¶ 16; SGI ¶ 106. Although Smallwood had been demoted from that rank less than four months earlier, he applied. Def. Ex. 3 at 174:10–13; SGI ¶ 107.

BPD received seven applications: Smallwood, Valencia Carter (black female), Ryan Felker (white male), Adam Lattanzi (white male), Henrietta Middleton (black female), Scott Swenson (white male), and Kurt Yourkovik (white male). Def. Ex. 4 ¶ 16; Def. Ex. 4A, Captain Score Summary; SGI ¶ 109.

On December 29, 2022, the Equity Office held an informational workshop for the applicants, led by Leslie Parker Blyther, Director of the Equity Office. Def. Ex. 21, Decl. of Leslie Parker Blyther, ¶ 5; SGI ¶ 110. The hour-long workshop provided applicants with a chance to speak with newly appointed Captains and receive general interview guidance. Def. Ex. 21, ¶ 6; SGI ¶ 111. The workshop did not preview questions or include mock interviews, and attendance was not a factor in the selection process. Def. Ex. 21, ¶¶ 6–7; Def. Ex. 4, ¶ 19; SGI ¶ 12. Parker

Blyther omitted Smallwood from the invitation to the workshop but invited the other six candidates. Def. Ex. 21, ¶ 7; SGI ¶ 114.

Smallwood interviewed for promotion to Captain on January 3, 2023. Def. Ex. 4, ¶ 19; SGI ¶ 115. He ranked fourth of seven in two of the evaluation categories, receiving scores of 283 for the interview and 219 for his application materials. Def. Ex. 4, ¶ 20; SGI ¶ 117.

After completing its evaluations, the CSRC recommended Carter, Felker, Lattanzi, Middleton, Swenson, and Yourkovik for promotion, and all were promoted to Captain. Def. Ex. 4, ¶ 24; SGI ¶ 120. The CSRC deferred Smallwood's application and did not reconsider Smallwood's application for that hiring cycle, though he remained eligible to reapply in future cycles. Def. Ex. 4, ¶¶ 25–26; SGI ¶ 122.

On January 6, 2023, Smallwood met with Parker Blyther, accompanied by Vanguard Justice Society[3] President Natalie Preston, to discuss Smallwood's omission from the December 29, 2022, workshop and his demotion while on FMLA leave. Def. Ex. 21, ¶ 8; SGI ¶ 123. Smallwood alleged that both actions were racially discriminatory. Def. Ex. 21, ¶ 8; SGI ¶ 124. Parker Blyther acknowledged that she inadvertently omitted Smallwood from the workshop invitation but stated she found no evidence of discriminatory animus. Def. Ex. 21, ¶ 10; SGI ¶ 125.

In 2023, Smallwood was transferred to Adult and Juvenile Booking, under the supervision of Chief Lisa Reynolds. Def. Ex. 2, Answer to Interrog. No. 3; SGI ¶ 129. BPD continued to invest in Smallwood's professional development by approving training opportunities. *See* SGI ¶ 130. Specifically, BPD granted six days of administrative leave for him to attend a National Organization of Black Law Enforcement Executives training in July 2023, and he later completed

[3] The Vanguard Justice Society is an auxiliary organization that customarily represents interests, concerns, and complaints on behalf of African American law enforcement officers. Def. Ex. 21, ¶ 9; SGI ¶ 123.

a week-long leadership course offered by 21st Century Police Leadership in October 2023. Def. Ex. 23, NOBLE Training Records; Def. Ex. 3, 117:8–10; SGI ¶ 130.

## II. STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 441 (D. Md. 2015) (citations omitted); *Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986)). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 255.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

## III. DISCUSSION

### A. Title VII Discrimination and Retaliation

Title VII prohibits an employer from discriminating against an individual with respect to employment based upon the individual's race, color, religion, sex, or national origin, and from retaliating against an individual for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (anti-discrimination provision); *id.* § 2000e-3(a) (anti-retaliation provision). Specifically, Title VII's anti-discrimination provision makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" *Id.* § 2000e-2(a). Also, Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]" or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* § 2000e-3(a).

To prove unlawful discrimination or retaliation under Title VII, a plaintiff may offer "direct or indirect" evidence of discriminatory or retaliatory animus under "ordinary principles of proof." *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 777 (D. Md. 2020) (citation and internal quotation marks omitted); *see also Netter v. Barnes*, 908 F.3d 932, 938 (4th Cir. 2018). Alternatively, a Title VII plaintiff may proceed under the burden-shifting "pretext" framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016); *Netter*, 908 F.3d at 938; *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021).

Within the burden-shifting framework, the burden initially rests with the plaintiff to "establish a prima facie case of employment discrimination or retaliation[.]" *Guessous*, 828 F.3d

at 216 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–56 (1981)). The precise formulation of the required *prima facie* showing will vary in "differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13. If a plaintiff establishes a *prima facie* case, a presumption of illegal discrimination or retaliation arises, and the burden shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). "This burden is one of production, not persuasion; it can involve no credibility assessment." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Usually, at the summary judgment stage, if an employer has proffered evidence of a legitimate reason for its adverse action, the court may assume, without deciding, that the plaintiff established a prima facie case. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Bagwell v. Downtown P'ship of Balt., Inc.*, Civ. No. ELH-18-1786, 2020 WL 247293, at *7 n.2 (D. Md. Jan. 15, 2020) (collecting cases); *see also Carter v. Baltimore Police Dep't*, Civ. No. BAH-21-2724, 2025 WL 564381, at *12 n.17 (D. Md. Feb. 20, 2025) (collecting cases). If the employer shows legitimate, non-discriminatory reasons for the adverse action, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating, by a preponderance of the evidence, that the employer's purported non-discriminatory or non-retaliatory reasons are just a pretext for unlawful discrimination. *Burdine*, 450 U.S. at 256. Despite this burden-shifting framework, "[t]he ultimate burden of persuading the trier of fact remains with the employee at all times." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019) (internal quotation marks and citation omitted).

**1. Race Discrimination**

By Memorandum Opinion and Order dated February 13, 2025, this Court limited Smallwood's Title VII race discrimination claim in Count I to certain discrete acts occurring after October 19, 2021—specifically, BPD's failure to promote him and denial of training and promotional opportunities. *See* ECF No. 21 at 18, 22; ECF No. 22, ¶ 2. BPD contends that it is entitled to summary judgment on Count I. *See* Mem. in Supp. of Mot. for Summ. J. at 19. The parties' briefing focuses on three discrete acts: Plaintiff's denied request for the "Training for Trainers" course in 2021; Plaintiff's exclusion from the informational workshop for Captain applicants in December 2022; and Plaintiff's deferral of consideration in the December 2022 to January 2023 Captain promotion window. *See* Opp'n at 14–17; Reply at 10–13.[4]

To establish a *prima facie* claim of discrimination under Title VII, a plaintiff "must demonstrate (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Angelini*, 464 F. Supp. 3d at 778 (quoting *Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015)).

The Court will assume without deciding that Smallwood has established a *prima facie* case for the three discrete actions challenged here. Even so, BPD has produced evidence of legitimate, non-discriminatory reasons for rejecting Plaintiff's training request, exclusion from the informational workshop, and promotion deferral. And because Smallwood has not produced sufficient evidence from which a reasonable jury could find those reasons pretextual, BPD is entitled to summary judgment on Count I.

**a. Training for Trainers**

[4] Smallwood's opposition also refers to denied training opportunities in 2018 and 2019, *see* ECF No. 46 at 18–19, but those discrete acts are not timely asserted in this action and are no longer within the scope of this case. *See* ECF No. 21 at 18.

BPD has produced evidence that Major Featherstone denied Smallwood's request to attend the Training for Trainers course in November 2021 for legitimate, non-discriminatory reasons. According to Major Featherstone's sworn declaration, he denied Smallwood's request because Smallwood had just arrived in the Central District as Captain and, as second in command, it was more important for Smallwood to attend "vital onboarding sessions meant to help ease the burden of transition, familiarize him with his new district, and improve his performance there." Def. Ex. 10, ¶ 8. Major Featherstone further explained that he needed Smallwood to fill the Captain role promptly, making a week-long, forty-hour training course "unworkable." *Id.* ¶ 9. Featherstone also believed that the Training for Trainers course was not germane to Smallwood's new role and that Smallwood did not appear deficient in the skills the course was designed to develop, including public speaking and presentation skills. *Id.* ¶ 10.

BPD has satisfied its burden by identifying record evidence of non-discriminatory reasons for denying Smallwood the November 2021 training opportunity. Therefore, the burden shifts to Plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 315 (4th Cir. 2017) (quoting *Burdine*, 450 U.S. at 253). "A plaintiff may establish pretext through two routes. The first is offering evidence that the employer's justification is 'unworthy of credence.'" *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 257 (4th Cir. 2025) (quoting *Reeves*, 530 U.S. at 143)). "The second is adducing other forms of circumstantial evidence sufficiently probative of discrimination." *Id.* (citing *Reeves*, 530 U.S. at 147). "If the plaintiff makes either showing of pretext, the case must be decided by a trier of fact and cannot be resolved on summary judgment." *Id.* (citing *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 652 (4th Cir. 2021)).

Smallwood does not meet his burden. He primarily argues that BPD's alleged justification is pretext because Captain Peter Heron, a white male in a different district (the Southern District), had the same position as Smallwood and was able to attend the Training for Trainers course. Opp'n at 16. Smallwood also disputes the premise that he needed additional time to acclimate to his new position. *Id.*

Comparator evidence can be a means of establishing pretext. *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) (quoting *McDonnell Douglas*, 411 U.S. at 804); *Fagbuyi v. Prince George's Cnty.*, Civ. No. GJH-17-2876, 2020 WL 1063090, at *13 (D. Md. Mar. 4, 2020). When relying on comparator evidence at the *prima facie* stage, a plaintiff typically must plead facts that the plaintiff dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *See Tafazzoli v. Nuclear Regul. Comm'n*, Civ. No. PWG-19-1638, 2020 WL 7027456, at *14 (D. Md. Nov. 30, 2020) (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019)). The inquiry at this stage is whether Plaintiff has met his burden to show BPD's purported non-discriminatory reasons are just a pretext for unlawful discrimination.

The evidence concerning Captain Heron does not create a genuine dispute as to whether Featherstone's stated reasons were pretextual. Heron worked in a different district, under a different chain of command, and had been in that district for approximately nine months before attending the training. Def. Ex. 10, ¶ 7; Def. Ex. 11, ¶ 10. Moreover, unlike Smallwood, Heron had already completed his onboarding. Def. Ex. 11, ¶ 10.[5] The record also reflects that Heron and

[5] Smallwood's self-serving opinion that he did not need time to onboard does not create a genuine dispute of material fact. *See Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.*, 58 F.4th 785, 802 (4th Cir. 2023) ("'Absent objective corroboration,' a self-serving opinion cannot defeat summary judgment, and a nonmovant cannot create a genuine dispute of material fact by relying on 'conclusory

Smallwood were differently situated in other ways too. BPD had not previously sent Heron to SMIP, whereas Smallwood had attended SMIP earlier that year. Def. Ex. 6, ¶ 6. Command Staff sought to address Heron's deficiencies in public speaking and presentation skills, which provided a reason for sending him to training not present for Smallwood. Finally, when operational needs subsequently arose in Heron's district, Heron was required to leave the training early and was not permitted to complete it. Def. Ex. 11, ¶ 10. Operational needs in Smallwood's district also precluded his attendance. Def. Ex. 10, ¶¶ 8–9. Thus, in this respect, Smallwood and Heron were treated similarly, even though they were not similarly situated in key aspects.

In short, the fact that a white Captain in a different district, with different supervisor, under different circumstances and with different training needs, was permitted to attend part of the course Smallwood was not allowed to attend does not cast doubt on Featherstone's explanation for denying Smallwood's request. Smallwood has identified no evidence suggesting that Featherstone's stated reasons were false or that his decision was motivated by Smallwood's race. Because Smallwood has not produced evidence from which a reasonable jury could find BPD's stated reasons unworthy of credence or otherwise infer discriminatory intent, *see Wannamaker-Amos*, 126 F.4th at 257 (citation omitted), BPD is entitled to summary judgment on Smallwood's claim that denial of his request to attend in the "Training for Trainers" course was racially discriminatory in violation of Title VII.

**b. Informational Workshop**

BPD contends that it is entitled to summary judgment on Smallwood's claim that his exclusion from the 2022 informational workshop was discriminatory. *See* Mem. in Supp. of Mot. for Summ. J. at 24–25; Reply at 11–12. The workshop was intended to help Captain applicants

---

allegations or bare denials[.]'" (quoting *Williams v. Giant Food, Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) and *Erwin v. United States*, 591 F.3d 313, 319 (4th Cir. 2010))).

understand the role and to offer interview guidance.[6] Smallwood argues that he was the only candidate who was not invited to the workshop and the only black candidate and his exclusion therefore establishes a *prima facie* case of race discrimination. Opp'n at 16.

The record does not support Smallwood's contention. It is undisputed that Leslie Parker Blyther, the Director of the Equity Office, inadvertently omitted Smallwood from the invitation to the informational workshop, while inviting the other six applicants. Def. Ex. 21, ¶¶ 6–7; SGI ¶ 114. Those six applicants included four white men and two black women. *Id.* Thus, contrary to Smallwood's contention, he was not the only black applicant, and the two other black applicants were invited to attend the workshop.

There is not evidence in the record from which a reasonable jury could infer that Smallwood was excluded because of his race. Smallwood testified at his deposition that he believed he was "the only black candidate" and that BPD had a "study session" to which it invited "all the Caucasian males" but from which it excluded him. Def. Ex. 3 at 184:1–6. But that testimony is contradicted by the undisputed record, which establishes that the other six applicants included white and black applicants. *See* SGI ¶ 126 (Smallwood "admit[ting]" that "all six other applicants were invited, which included men and women of multiple racial and ethnic backgrounds, including Black applicants").

Smallwood admits that Parker Blyther's omission of him from the workshop invitation was an inadvertent "mistake," SGI ¶ 114, and identifies no evidence of discriminatory intent in this omission. His own speculation that BPD excluded him because he is black is insufficient to create a genuine dispute of material fact. Because the uncontradicted evidence establishes a race-neutral

[6] Notably, Smallwood previously served as a Captain and, therefore, was already personally familiar with the role. Furthermore, the workshop did not preview interview questions, and attendance was not a factor in the selection process. *See* Def. Ex. 21, ¶¶ 6–7; Def. Ex. 4, ¶ 19; SGI ¶ 112.

explanation for Smallwood's exclusion from the workshop, and Smallwood has identified no evidence from which a reasonable jury could find that explanation pretextual, BPD is entitled to summary judgment on Smallwood's claim that his exclusion was racially discriminatory in violation of Title VII.

**c. Deferred Promotion**

Smallwood finally challenges as racially discriminatory the CSRC deferral of consideration of Smallwood's application for promotion to Captain in 2023. BPD has offered evidence that it deferred consideration of promoting Smallwood for legitimate, non-discriminatory reasons: that he had "three ongoing open investigations into allegation of serious misconduct." Def. Ex. 4, ¶ 25. BPD Policy 1738 provides that candidates for promotion may be deferred if there is an "[o]ngoing investigation of a complaint, to be considered by the Promotion Committee on a case-by-case basis." Def. Ex. 14, BPD Policy 1738, at 7. Smallwood was being investigated for AWOL, neglect of duty, and time theft. Def. Ex. 18. In light of these allegations of "serious" misconduct, and in accordance with Policy 1738, BPD says that it deferred consideration of Smallwood's promotion. Def. Ex. 4, ¶¶ 25, 27.

Smallwood argues that BPD's purported reliance on Policy 1738 is a pretext for two reasons. First, Smallwood contends that, among the other December 2022 Captain promotion candidates, two of the white candidates also had open investigations, but neither of their allegations were deemed serious enough to warrant deferral, and they were both promoted regardless. Opp'n at 17 (citing SGI ¶ 119). Second, Smallwood argues that, in 2024, Jennifer McGrath, who is white, was promoted from Captain to Major despite having been charged with criminal harassment and having an open investigation. *Id.*

Neither argument establishes pretext. With respect to the other December 2022 candidates, the record does not support Smallwood's contention that white candidates with pending investigations were treated more favorably. The only two applicants that had open investigations at the time of their Captain promotion were Carter and Middleton—both of whom are black. Def. Ex. 4, ¶ 23; Def. Ex. 21, ¶ 7.[7] Smallwood cites SGI ¶ 119, but that paragraph merely denies as "conclusory" testimony that the pending investigations involving Carter and Middleton were minor and did not warrant deferral. Smallwood does not identify any white candidate who had a pending investigation while receiving more favorable treatment by BPD than Smallwood. Indeed, his own deposition testimony that he was "the only African-American candidate and every Caucasian candidate was promoted," Pl. Ex. 20, Fontaine Smallwood Dep., at 190:7–9, is contradicted by the record, which establishes that Carter and Middleton were black applicants and were promoted.

Nor does Smallwood's reference to Jennifer McGrath's 2024 promotion suffice to establish pretext. To begin, Smallwood's knowledge of the circumstances surrounding McGrath's promotion comes entirely from media reports. *See* Pl. Ex. 20 at 201:8–20. Inadmissible hearsay is "insufficient to defeat a summary judgment motion." *Nguyen v. MGM Nat'l Harbor, LLC*, Civ. No. GLS-21-1602, 2022 WL 4290577, at *3 (D. Md. Sept. 16, 2022) (citing *Hicks v. Ferreyra*, 396 F. Supp. 3d. 564, 579 (D. Md. 2019)); *see also Monk v. Potter*, 723 F. Supp. 2d 860, 878 (E.D. Va. 2010), *aff'd sub nom. Monk v. Donahoe*, 407 F. App'x 675 (4th Cir. 2011) (reasoning that plaintiff's deposition testimony that he heard that female colleagues had been disciplined less severely than him was "second-hand, sparse and unreliable" and thus insufficient at summary judgment). More importantly, the circumstances of Smallwood's and McGrath's cases reflected in

[7] In Eric Melancon's declaration, he avers that the nature of the allegations against Carter and Middleton were "minor" and "did not warrant deferral of their applications." Def. Ex. 4, ¶ 23.

the record are materially different. McGrath was promoted from Captain to Major, not from Lieutenant to Captain, and her promotion occurred in 2024 under Police Commissioner Richard Worley. Consideration of Smallwood's re-promotion from Lieutenant to Captain was deferred in early 2023 under the administration of then-Police Commissioner Michael Harrison. The promotion of a differently situated employee to a different rank and position, two years later does not, without more, establish that BPD's reliance on Policy 1738 was a pretext for race discrimination.

The Court concludes that Smallwood has not met his burden of presenting evidence sufficient for a reasonable jury to find that BPD's stated reason for deferring his promotion was a pretext for race discrimination.

In sum, BPD is entitled to summary judgment on Count I

**2. Retaliation**

BPD is also entitled to summary judgment on the Title VII retaliation claim asserted in Count III of Smallwood's Amended Complaint.

First, when asked to identify the alleged retaliation in discovery, Smallwood cited only acts that this Court had already excluded from Count III when it granted in part BPD's motion to dismiss. In response to BPD's interrogatory asking him to detail each instance in which he claimed retaliation in violation of Title VII, Smallwood identified a failure to promote in July 2020 and his reassignment to supervision by Featherstone in November 2021 as retaliatory acts. *See* Def. Ex. 2, Answer to Interrog. No. 10. But this Court had already dismissed any retaliation claim based on those acts. *See* ECF No. 21 at 18, 26 (dismissing "[a]ny retaliation claim based on actions apart from the failure to promote in December 2022 and January 2023"); ECF No. 22, ¶ 2 (dismissing Count III except as to "denial of promotion . . . that occurred after October 19, 2021"). More specifically, first, Smallwood responded that he filed complaints with the Maryland Commission

on Civil Rights ("MCCR") in 2019 and 2020 and, in July 2020, he had a meeting to ask why he had not been promoted. Def. Ex. 2, Answer to Interrog. No. 10. Second, Plaintiff responded that then-Lieutenant Colonel Worley did not respond to his request to attend training at the University of Louisville in 2020 and, in November 2021, Smallwood was assigned to Featherstone after he lodged an internal complaint against Hohman, his direct supervisor at the time. *Id.* Smallwood's interrogatory answer is dated October 31, 2025, *see* Def. Ex. 2 at 23, several months after this Court had limited Count III to exclude the acts described in the answer, *see* ECF Nos. 21 & 22 (Memorandum Opinion and Order dated February 13, 2025). When asked at his deposition whether he was claiming any other acts of retaliation, Smallwood could not identify any, stating: "Yes, I think there are other instances, but do I have them now with me, no…. I don't know how to regurgitate them to you now." Def. Ex. 3 at 253:10–254:3.

Interrogatory answers and deposition testimony notwithstanding, Smallwood argues in opposition to BPD's summary judgment motion that BPD retaliated against him for his EEO activity in November 2022 by failing to promote him in December 2022 and January 2023. *See* Opp'n at 18–22. Assuming that Smallwood can establish a *prima facie* case of retaliation, BPD has produced a legitimate, non-retaliatory reason for deferring consideration of Smallwood's promotion: that he had three then-open investigations based on allegations of serious misconduct. *See* Def. Ex. 4, ¶ 25; Part III.A.1.C *supra*. BPD Policy 1738 authorizes deferral of promotion if a candidate is the subject of even one such ongoing investigation. *See* Def. Ex. 14 at 6. To overcome summary judgment on his retaliation claim, Smallwood must present evidence that BPD's proffered reason was not the true reason for the employment termination, *see Foster*, 787 F.3d at 250, and that Plaintiff "has been the victim of retaliation[,]" *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).

At the time he filed his opposition to summary judgment, Smallwood was on notice of BPD's evidence and argument that it did not promote him in January 2023 based on Smallwood's then-open misconduct investigations—not because of Smallwood's protected activity in November 2022. *See* Mem. in Supp. of Mot. for Summ. J. at 15, 24, 27–28 n.7; Def. Ex. 4, ¶ 25; Def. Ex. 14. Even so, Smallwood's opposition is focused entirely on whether he presents a *prima facie* case of retaliation. He does not argue that his then-ongoing misconduct investigations and the CSRC's application of Policy 1738 were mere pretext for retaliating against him for his November 2022 EEO activity. *See* Opp'n at 18–22. That omission is fatal to his claim.

Furthermore, Smallwood fails to identify any evidence in the record to suggest that BPD's stated rationale for deferring his promotion was false, much less that retaliation was the real motive. Smallwood's primary argument (again, for making a *prima facie* case) is that the temporal proximity establishes causation between his protected activity and the subsequent failure to promote, *see id.* at 24–26, but it is well established that "timing alone generally cannot defeat summary judgment once an employer has offered a convincing, nonretaliatory explanation[,]" *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 79 (4th Cir. 2016) (citing *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009)); *accord Ryan v. Mullin*, Civ. No. LKG-23-01364, 2026 WL 847874, at *9 (D. Md. Mar. 27, 2026) (observing that while temporal proximity may establish a *prima facie* case of retaliation, "it does not, by itself, 'rebut [a defendant's] legitimate, and uncontested, grounds' for its employment decisions" (quoting *Dziwulski v. Mayor & City Council of Balt.*, Civ. No. DLB-18-277, 2020 WL 1034539, at *11 (D. Md. Mar. 3, 2020))).[8]

[8] Smallwood argues that causation is established because four white men were promoted instead of him. ECF No. 46 at 24–25. That may be an argument in support of a race discrimination claim, but Smallwood does not connect that argument to his retaliation claim. And, as explained in Part III.A.1 *supra*, Smallwood's race discrimination claim fails as a matter of law.

In sum, "[w]ithout more than his own assertions, [Smallwood] cannot meet his burden at summary judgment." *SB. ex rel. A.L.*, 819 F.3d at 79 (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 705–06 (4th Cir. 2001) (rejecting retaliation claim at summary judgment because no reasonable jury could find the employer's explanation pretextual))). BPD's motion for summary judgment is granted as to Count III.

**B. FMLA**

In Count VII of his Amended Complaint, Smallwood asserts a claim for retaliation in violation of the FMLA. Specifically, Plaintiff contends that BPD demoted him from Captain to Lieutenant in August 2022 for taking FMLA leave. BPD argues that it is entitled to summary judgment on this claim because it demoted him not for taking FMLA leave but for legitimate, non-retaliatory reasons.

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). "In other words, an employer may not retaliate against an employee simply because the employee took FMLA leave." *Burgess v. Csx Transportation, Inc.*, Civ. No. JKB-18-0744, 2026 WL 1948129, at *6 (D. Md. July 6, 2026) (citing *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013)).

To succeed on an FMLA retaliation claim, an employee must prove that their employer intended to retaliate against them. *Shipton v. Balt. Gas & Elec. Co.*, 109 F.4th 701, 706 (4th Cir.), *cert. denied*, 145 S. Ct. 774 (2024). As with Title VII, "[a] plaintiff can demonstrate FMLA retaliation by either (1) producing direct and indirect evidence of retaliatory animus or (2) demonstrating 'intent by circumstantial evidence, which we evaluate under the framework established for Title VII cases in *McDonnell Douglas*.'" *Id.* (quoting *Fry v. Rand Constr. Corp.*,

964 F.3d 239, 244 (4th Cir. 2020)). Courts evaluate such a claim under the same standards as Title VII. As the Fourth Circuit explained in *Shipton*:

> Under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), an employee must make [a] *prima facie* showing that he engaged in protected activity, that the employer took adverse action against him, and that adverse action was [causally] connected to the plaintiff's protected activity. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006). If the employee demonstrates sufficient evidence to support a prima facie showing of retaliation, and the employer offers a non-discriminatory explanation for the termination, the employee bears the burden of establishing the employer's proffered explanation is pretext for FMLA retaliation. *Id.*

*Shipton*, 109 F.4th at 706. To survive summary judgment, a plaintiff "must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, *i.e.*, discrimination or retaliation." *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 793 (4th Cir. 2023) (citation and internal quotation marks omitted).

Smallwood does not meet his burden. To begin, Smallwood's argument suffers from a misunderstanding of the law. He contends that, "[in] demoting [him] while he was on medical leave, BPD violated Plaintiff's rights under the FMLA." Opp'n at 27; *see also* Def. Ex. 3 at 279:20–280:15 (Smallwood testifying that it was illegal for BPD to demote him while on FMLA leave). But the FMLA does not insulate an employee from legitimate discipline based on pre-existing performance issues. *See Buckmaster v. Nat'l R.R. Passenger Corp.*, Civ. No. RDB-19-3203, 2022 WL 1081947, at *13 (D. Md. Apr. 11, 2022) ("'As the FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior,' . . . 'an employee lawfully may be dismissed . . . if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.'" (quoting *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016), and then *Greene v. YRC, Inc.*, 987 F. Supp.

2d 644, 655 (D. Md. 2013))). Thus, the fact that BPD demoted Smallwood while he was on FMLA leave does not, standing alone, establish unlawful retaliation under the FMLA.

The relevant question, instead, is whether BPD demoted Smallwood because he engaged in FMLA-protected activity. BPD has proffered evidence that Smallwood's FMLA leave was not a factor in BPD's decision to demote him from Captain to Lieutenant. *See* Def. Ex. 9, Answer to Interrogatory No. 18. Rather, BPD offers that it demoted Smallwood "for his poor performance, poor behavior, interpersonal issues, poor work habits, poor availability/responsiveness, and poor general conduct and performance as a Captain." Mem. in Supp. of Mot. For Summ. J. at 29 (citing Def. Ex. 9, Answer to Interrog. No. 3, Def. Exs. 15, 16, 16A). Evidence in the record shows that BPD presented these concerns to the CSRC through a memorandum prepared by Deputy Commissioner Jones and other documentation of Smallwood's performance issues. *See* Def. Exs. 15, 16, 16A. Notably, those concerns and the events underlying them predated Smallwood's FMLA leave.

Smallwood contends that whether he was actually performing poorly is a disputed issue of material fact. *See* Opp'n at 23. He also argues that BPD "failed to follow its own established procedures related to performance deficiencies." Neither argument demonstrates pretext.

First, the relevant inquiry is not whether Smallwood's performance was deficient, but whether the CSRC "honestly believed" that it was deficient. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) ("[I]t is the perception of the decisionmaker which is relevant." (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002))); *see also Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006) ("In assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason

to be credible." (citation and internal quotation marks omitted)). The only evidence Smallwood identifies to cast doubt on the CSRC's stated reasons is his own assertion that Deputy Commissioner Jones, who authored the memorandum recommending his demotion, "publicly stated on multiple occasions during ComStat meetings" that Smallwood was doing "an excellent job." *See* SGI ¶¶ 60–63, 83 (citing Pl. Ex. 19, Suppl. Decl. of Fontaine Smallwood, ¶ 104). At most, Jones's statements create a disagreement about Smallwood's actual performance; they do not undermine the CSRC's evidence that it honestly relied on documented concerns about Smallwood's performance and conduct in deciding to demote him. The statements are insufficient to establish that the reason produced for Smallwood's demotion is "unworthy of credence" or otherwise pretextual. *Wannamaker-Amos*, 126 F.4th at 257 (citation omitted).

Second, Smallwood does not proffer any evidence that BPD failed to follow "established procedures related to performance deficiencies." Opp'n at 22. Smallwood avers that "no 'blue-team' complaint was issued against me, which is the proper BPD procedure for reporting a legitimate complaints against me, or if I was causing problems." Pl. Ex. 19, ¶ 45. He further states that he was not informed of any complaints or deficiencies. *Id.* But Smallwood identifies no evidence establishing that a "blue-team" complaint was required before BPD could demote a Captain, nor does he explain what procedures BPD was required to follow or how BPD departed from them here. His conclusory assertion that BPD was required to issue a "blue-team" complaint therefore does not create a genuine dispute of material fact.

Indeed, the publicly available BPD policy materials undermine, rather than support, Smallwood's argument. The BPD PIB's Internal Operations and Training Manual describes "Blue Team" as an "incident logging and tracking program used by BPD to document a variety of police incidents (e.g., complaints, uses of force, etc.) and link them to the IAPro case management system

used by PIB." *See* Public Integrity Bureau, Internal Operations and Training Manual, https://perma.cc/3APN-BQRQ (last visited August 28, 2026).[9] By its terms, the Blue Team system appears to concern the documentation and tracking of incidents and potential misconduct. Smallwood identifies no evidence that it constitutes a mandatory procedure for documenting or addressing a Captain's performance deficiencies.

Finally, Smallwood half-heartedly alleges that BPD retaliated against him because, when he returned from FMLA leave, he noticed that some of belongings were "thrown into a variety of locations and some of his equipment was missing." Opp'n at 24 (citing SGI ¶ 162). Smallwood argues that "[t]his act is one that is clearly retaliation, and its temporal proximity to the FMLA protected activity makes this a claim of FMLA retaliation." *Id.* Smallwood offers no record evidence that identifies who moved his belongings, let alone that they knew Smallwood was on FMLA leave and chose to retaliate against him for it by moving his belongings. Smallwood's theory of retaliation therefore fails. *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (affirming dismissal of retaliation claim where plaintiff failed to adduce "a scintilla of evidence" showing "who did [the allegedly retaliatory act], or why").

In sum, the Court finds no triable issue on Smallwood's FMLA retaliation claim. Defendant's motion for summary judgment on Count VII of the Amended Complaint is granted.

## IV. CONCLUSION

For the foregoing reasons, the Court grants BPD's Motion for Summary Judgment (ECF 38). A separate Order will follow.

August 31, 2026
Date

Matthew J. Maddox
United States District Judge

[9] The Court can take judicial notice of matters of public record. *See Robinson v. Bd. of Educ. of Washington Cnty*, Civ. No. ELH-22-01102, 2023 WL 6643373, at *6 (D. Md. Oct. 12, 2023).